# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 3204 | **DATE** | May 29, 2001 |
| **CASE TITLE** | Williams v. Cowan | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Williams' petition for habeas corpus [ ] is denied. ENTER MEMORANDUM OPINION.

(11)   x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| X | Notices MAILED by judge's staff. | | JUN 01 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 36 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to _____ | | date mailed notice | |
| KAM | courtroom deputy's initials | Date/time received in central Clerk's Office | KAM mailing deputy initials | |

(Reserved for use by the Court)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. KEVIN WILLIAMS,<br><br>    Petitioner,<br><br>v.<br><br>ROGER COWAN, Warden,<br>Menard Correctional Center,<br><br>    Respondent. | No. 98 C 3204 |

## MEMORANDUM OPINION

Before the court is Kevin Williams's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated in this opinion, the petition is denied.

## BACKGROUND

On October 25, 1991, following a joint bench trial in the Circuit Court of Cook County with co-defendants Ira Hines and Reginald Lee, Kevin Williams was convicted of first degree murder, attempted murder, aggravated battery with a firearm, aggravated battery, aggravated discharge of a firearm, and aggravated unlawful restraint. He was sentenced to life imprisonment for murder with concurrent terms of 30 years and 10 years for the lesser offenses. The conviction and sentence were affirmed by the Illinois Appellate Court in People v. Williams, 262 Ill. App. 3d 808, 635 N.E.2d 653 (1st Dist. 1994), and the Illinois Supreme Court denied leave to

36

appeal, 157 Ill. 2d 520, 642 N.E.2d 1300 (1994). The following facts are derived from the Illinois Appellate Court's opinion on Williams's direct appeal.

Marsha Robertson testified that on February 18, 1991, at approximately 1:15 a.m., she was with the victim, Harry Sain, who was the father of her two children. As they were walking to Sain's apartment at 844 S. Racine #838, in Chicago, Robertson saw four "dudes" approaching them. She recognized the four men from the neighborhood only as "Thunder," "Fruitie," "West," and "Reggie Lee." She later identified Fruitie as Williams, Thunder as Hines, and Reggie Lee as Reginald Lee. Williams and Hines belonged to the Black Gangsters or the Disciples street gang, who "hung out" in the area. Robertson noticed that Williams, Hines, and Lee had guns.

Just before Sain and Robertson reached the entrance of Sain's apartment building, Robertson said hello to Hines. Hines then told Williams to place Robertson "under arrest." Williams grabbed Robertson by the collar and pushed her against a wall in the building's entryway. Lee went upstairs, where Sain was trying to get into his apartment. Thereafter, Hines asked Robertson about the whereabouts of "A.K.," Robertson's boyfriend and a member of the El Rukn street gang (a rival gang of the Black Gangsters and the Disciples), and "Mark," Robertson's cousin. Robertson did not answer.

Williams then asked Hines whether Hines wanted him to "do it now." Hines repeatedly answered "no," but a short time later, when Sain started to walk back downstairs, Hines said "yes." Williams then fired his gun at Sain seven or eight times, and after another such command from Hines, fired at Robertson twice. Hines also shot at Sain twice, after he was already down. Williams and Hines then ran away, and a short time later, Lee fled.

After the police arrived, Robertson told them what had happened and that Williams and Hines had shot Sain. Although Robertson had powder burns on her face from the shooting, she went to the police station rather than to the hospital. There, she viewed photographs, and from them she recognized Hines. On February 21, 1991, she viewed more photographs and recognized Williams and Lee. Robertson was also interviewed by an assistant state's attorney and signed a written statement. She testified before a grand jury in May 1991. After testifying, Robertson stayed in hotels paid for by the state.[1]

On June 25, 1991, Robertson was visiting her sister at 1239 South Racine. Two men came to the house, threatened her, and asked her to come with them to sign a statement. They went to Hines's attorney's office downtown. Robertson gave a statement, which was transcribed by a court reporter, saying that the offenders wore ski masks and that she was high on heroin at the time of the offense.

---

[1] The parties stipulated that the state spent approximately $6,800 on three different hotels for Robertson and gave her about $500 directly.

She also stated that she named the co-defendants because she was angry at them for kidnapping her boyfriend, A.K. About two months later, Robertson went back to the attorney's office and signed the statement. Robertson testified that the statement was false and coerced.

On cross-examination, Robertson stated the following. She had stayed in several hotels paid for by the state and had received an additional five to six hundred dollars for living expenses. She admitted that she used heroin "every now and then" but denied that she was an addict. Robertson said that she had used heroin two days before testifying and one day before the incident, but not on the day or night of the incident. On May 8, 1991, Robertson was arrested for bringing drugs into the Cook County Jail when visiting A.K. She was held there for twelve days before being released on an "I-bond." On the eighth day of her incarceration, Robertson testified before the grand jury. She claimed that she was not offered a deal to testify. Her drug case was later dismissed when the arresting officers failed to show up for court.

Additional testimony was heard from police officers, occurrence and post-occurrence witnesses, and a physician. The testimony corroborated Robertson's version of the events. Furthermore, police officer Thomas Newton testified that he arrested Williams at about 7:30 p.m. on April 26, 1991. When he searched Williams's car subsequent to the arrest, Newton found a

12-gauge shotgun in the trunk and a 9-millimeter Luger pistol underneath the driver's side dashboard. The guns were not either of the two weapons that fired the bullets recovered at the scene.[2] The defense called several witnesses, including a lawyer who shared a suite with Hines's attorney. The lawyer witnessed Robertson's statement on June 25, 1991, and stated that Robertson did not appear to be nervous or under any stress.

Following closing arguments, the court found Williams guilty of first degree murder, attempted murder, aggravated battery with a firearm, aggravated battery, aggravated discharge of a firearm, and aggravated unlawful restraint. Williams appealed his conviction on a number of grounds: (1) evidence of Williams's gang affiliation admitted through Robertson's testimony was unfounded and irrelevant and denied him a fair trial; (2) admission of testimony regarding two weapons found in Williams's car at the time of his arrest denied him a fair trial where stipulated ballistics evidence showed that the weapons were not fired in the crimes charged; (3) the admission of Robertson's grand jury testimony naming Williams as one of the offenders and her statement to a police detective to the same effect amounted to error that denied Williams a fair trial; (4) the state's failure to inform defense counsel that Robertson claimed to have recanted her original version of the offense because she was threatened by associates of

---

[2]/ The guns themselves were not admitted as evidence, but Officer Newton's testimony about them was permitted.

Williams violated discovery rules and denied Williams a fair trial; and (5) Williams's trial counsel failed to request a continuance or move for a mistrial upon learning that Robertson had implicated a co-defendant's attorney in an intimidation scheme. On May 10, 1994, the Illinois Appellate Court rejected Williams's arguments and affirmed his conviction. Williams raised the same arguments in his petition for leave to appeal to the Illinois Supreme Court, which was denied on October 6, 1994. People v. Williams, 262 Ill. App. 3d 808, 635 N.E.2d 653 (1st Dist.), appeal denied, 157 Ill. 2d 520, 642 N.E.2d 1300 (1994).

Williams then filed a pro se petition for post-conviction relief (the "PPCR"). He contended that (1) the trial court abused its discretion by denying his motion for a directed finding of acquittal; (2) the trial court erred by striking testimony of a state's witness; and (3) he was denied effective assistance of counsel for a number of reasons. (Respondent's Answer, Ex. G.) The PPCR was dismissed on December 28, 1995, and Williams appealed. (Id., Ex. H.) At this time the State Appellate Defender moved to withdraw as Williams's counsel pursuant to Pennsylvania v. Finley, 481 U.S. 551 (1987), contending that because Williams's appeal failed to set forth any facts that would support a claim of constitutional deprivation, no appealable issues existed. (Id., Ex. I.) On May 21, 1997, the Illinois Appellate Court granted the motion to withdraw and affirmed the trial court's judgment. (Id.,

Ex. J.) Williams did not file a petition for leave to appeal the dismissal of the PPCR to the Illinois Supreme Court.

On May 15, 1998, Williams filed the instant petition for a writ of habeas corpus. He sets forth numerous grounds for relief. First, he argues that his Sixth Amendment rights were violated by the actions of his trial counsel. Williams alleges that his trial counsel (a) failed to call Camilla Dickens, a witness who would have impeached Robertson; (b) failed to investigate the possibility that Robertson's testimony was perjured; (c) failed to object to the admission of testimony regarding two weapons found in Williams's car at the time of his arrest where stipulated ballistics evidence showed that the weapons were not fired in the crimes charged; (d) should not have stipulated that Robertson was relocated by the state to three different hotels; and (e) failed to object to the admission of testimony regarding Williams's gang affiliation. Second, Williams argues that the trial court denied his due process rights by allowing Robertson's testimony that Williams was affiliated with a gang. Third, Williams contends that he was denied due process because the trial court admitted testimony regarding two weapons found in Williams's car at the time of his arrest where stipulated ballistics evidence showed that the weapons were not fired in the crimes charged. Fourth, Williams argues that the trial court denied his due process rights by admitting Robertson's prior consistent statements naming Williams

as one of the offenders. Fifth, Williams alleges that the state's failure to inform defense counsel that Robertson claimed to have recanted because she was threatened by associates of defendant violated applicable discovery rules and denied him a fair trial. Sixth, Williams contends that he was denied due process because the state knowingly allowed Robertson to commit perjury. Seventh, Williams argues that he was denied due process because the state paid Robertson in exchange for her testimony.

**DISCUSSION**

A federal court may grant a writ of habeas corpus when, under a state court judgment, a person is held in custody in violation of the United States Constitution. See 28 U.S.C. § 2254; Bocian v. Godinez, 101 F.3d 465, 468 (7th Cir. 1996). Before a federal court will consider the merits of a habeas petition, the applicant must exhaust the remedies available to him in state court. See 28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275 (1971). The applicant also must fairly present any federal claims in state court first, or risk procedural default. See Verdin v. O'Leary, 972 F.2d 1467, 1472-73 (7th Cir. 1992).

A.  **Procedural Default**

First enunciated in Ex parte Royall, 117 U.S. 241 (1886), the exhaustion requirement is designed "not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be

vindicated and unfounded litigation obviated before resort to federal court." Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992). The requirement is grounded in principles of comity, and reflects a desire to protect state courts' role in the enforcement of federal law. See Castille v. Peoples, 489 U.S. 346, 349 (1989). The requirement is also based on a pragmatic consideration that fully exhausted claims will usually be accompanied by a complete factual record once they reach federal court. See id.

"To meet the exhaustion requirement, an applicant must have raised all of his claims during the course of the state proceedings, presenting each claim fully and fairly to the state courts. A petitioner presents his claims fully 'by pursuing all available avenues of relief provided by the state before turning to the federal courts.'" Rodriguez v. Scillia, 193 F.3d 913, 917 (7th Cir. 1999) (citations omitted). Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court. See Picard, 404 U.S. at 275-76. Both the operative facts and the controlling legal principles of a constitutional claim must have been submitted to the state court. See id. at 277. If a prisoner fails to present his claims in a petition for discretionary review to a state court of last resort, those claims

are procedurally defaulted. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999).[3]

Also, federal courts will not consider an issue of federal law arising from a judgment of a state court if that judgment rests on a state law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the court's decision. Harris v. Reed, 489 U.S. 255, 260 (1989). For example, where a state court rejects an argument for failure to comply with a state procedural requirement, that decision rests on independent and adequate state grounds. See Coleman v. Thompson, 501 U.S. 722, 750 (1991) (holding that prisoner's claims were barred from federal habeas review because the Virginia Supreme Court had dismissed his habeas action as untimely filed under its rules). This principle is also grounded in concerns of comity. See id. at 730.

Procedural default precludes review by this court unless petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." See id. at 750. The "fundamental miscarriage of justice" pathway to substantive habeas review is limited to the "extraordinary case, where a

---

[3]/ Williams contends that O'Sullivan is not applicable to him because it was decided long after the time for filing his petition for leave to appeal to the Illinois Supreme Court had come and gone. Nevertheless, the rule stated in O'Sullivan was applied retroactively by the Supreme Court in that case and has since been applied retroactively by the Seventh Circuit. See, e.g., Rodriguez v. Scillia, 193 F.3d 913, 917 (7th Cir. 1999).

constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 321 (1995). With these principles in mind, we turn to Williams's first, fourth, sixth, and seventh claims.

1. **Ineffective Assistance of Counsel**

Respondent argues that Williams's claim of ineffective assistance of trial counsel is procedurally defaulted because he never raised it in state court. Williams alleges five bases for this claim: (a) counsel failed to call Camilla Dickens, a witness who would have impeached Robertson; (b) counsel failed to investigate the possibility that Robertson's testimony was perjured; (c) counsel failed to object to the admission of testimony regarding two weapons found in Williams's car at the time of his arrest where stipulated ballistics evidence showed that the weapons were not fired in the crimes charged; (d) counsel should not have stipulated that Robertson was relocated by the state to three different hotels; and (e) counsel failed to object to testimony regarding Williams's gang affiliation.

Williams raised an ineffective assistance of trial counsel claim in his direct appeal, but the sole basis for the claim was that trial counsel was ineffective when she failed to request a continuance or move for a mistrial upon learning that Robertson had implicated a co-defendant's attorney in an intimidation scheme. None of the above-mentioned grounds were raised in Williams's

direct appeal. Williams did raise grounds (a) and (b) in his petition for post-conviction relief (the "PPCR"), and appealed the denial of the PPCR to the Illinois Appellate Court, but he did not petition the Illinois Supreme Court for leave to appeal the denial of the PPCR. Williams did not afford the state's highest court an opportunity to address these claims; therefore, procedural default bars their review. See O'Sullivan, 526 U.S. at 848; Rodriguez, 193 F.3d at 917; Cawley v. DeTella, 71 F.3d 691, 694 (7th Cir. 1995).

Williams concedes that he did not properly raise the bases for his instant ineffective assistance claim in state court, but attempts to show cause for this failure by apparently arguing that post-conviction counsel rendered him ineffective assistance. However, "[i]neffective assistance of postconviction counsel is not itself a cognizable federal constitutional violation and may not serve as cause for a procedural default." See Steward v. Gilmore, 80 F.3d 1205, 1212 (7th Cir. 1996). The reason for this rule is that there is no constitutional entitlement to effective assistance of counsel during the state post-conviction process. See Cawley, 71 F.3d at 695. Williams also does not establish a "fundamental miscarriage of justice" that would permit him to avoid showing cause and prejudice. Thus, Williams has procedurally defaulted his ineffective assistance of counsel claim.

2. **Admission of Robertson's Prior Consistent Statements**

Williams's fourth claim is that the trial court denied him due process by admitting Robertson's prior consistent statements to a

police officer and the grand jury, naming Williams as one of the offenders. This claim is procedurally defaulted because it was rejected on adequate and independent state law grounds. On direct appeal, the Illinois Appellate Court found that Williams waived this issue by failing to object at trial and by failing to raise the issue in his post-trial motion. When a state court determines that a habeas petitioner waives a claim in state court, that waiver is an independent and adequate state ground that bars federal habeas relief. See Harris, 489 U.S. at 258 (citing Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)). Williams fails to establish cause and prejudice in his petition, and he does not demonstrate a fundamental miscarriage of justice from the refusal to consider this claim. Williams's fourth claim is thus procedurally defaulted.

### 3. State's Alleged Knowledge of Perjured Testimony & State's Alleged Payment for Robertson's Testimony

Williams's sixth and seventh claims are that he was denied due process because the state purportedly knowingly allowed its witness, Robertson, to commit perjury and because the state allegedly paid Robertson in exchange for her testimony. Respondent believes that these claims are procedurally defaulted because they were not raised on direct appeal nor in Williams's petition for leave to appeal to the Illinois Supreme Court. We agree. Williams has not shown cause for or prejudice from the default, or a

fundamental miscarriage of justice; accordingly, we find that these claims are procedurally barred.

B. **Merits of Non-Defaulted Claims**

Williams has properly preserved for federal habeas review his second, third, and fifth claims. 28 U.S.C. § 2254(d), which prescribes the treatment federal courts are to accord legal determinations by state courts, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In interpreting this language, the Seventh Circuit has held that to secure a writ, a petitioner must show that the state court's decision was contrary to clearly established Supreme Court case law, or alternatively, that the state court's decision was an unreasonable application of Supreme Court case law. See Bocian, 101 F.3d at 471.

1. **Testimony Regarding Gang Affiliation & Testimony Regarding Weapons**

Williams's second claim is that the trial court denied him due process when it permitted evidence of Williams's gang affiliation admitted through Robertson's testimony. Williams's third claim is that the trial court denied him due process when it admitted

testimony regarding the two weapons found in Williams's car at the time of his arrest, where stipulated ballistics evidence showed that the weapons were not fired in the crimes charged.

"Unless the petitioner demonstrates that 'a specific constitutional right has been violated, a federal court can issue a writ of habeas corpus only when a state evidentiary ruling violates the defendant's due process rights by denying him a fundamentally fair trial.'" Haas v. Abrahamson, 910 F.2d 384, 389 (7th Cir. 1990) (quoting United States ex rel. Lee v. Flannigan, 884 F.2d 945, 953 (7th Cir. 1989)). Accordingly, state evidentiary rulings "rarely serve as a proper basis for granting a writ for habeas corpus." Id.

In order to be admissible as evidence of motive, gang evidence must show both that the defendant is a gang member and that gang activity is related to the crime charged. See People v. Smith, 141 Ill. 2d 40, 58, 565 N.E.2d 900, 907 (1990). The Illinois Appellate Court concluded that any objection to the foundational basis of the gang affiliation testimony was waived because at trial and in Williams's post-trial motion, his objection was merely to the relevance of the evidence. Accordingly, to the extent Williams's second claim is based upon a challenge to the foundational basis of the testimony, it is procedurally defaulted because that type of challenge was rejected on adequate and independent state grounds. As for the relevance of the evidence concerning gang membership, the Illinois Appellate Court found that the evidence was clearly

relevant to the issue of motive: "[D]efendant and his codefendants were on the street, armed, looking for [rival gang member] A.K. The evidence of gang affiliation provides the motive for this search. Since the murder of Sain and the attempted murder of Robertson were apparently by-products of the search for A.K., the evidence of gang affiliation provides a motive for the otherwise inexplicable acts." Williams, 262 Ill. App. 3d at 820, 635 N.E.2d at 662. The state court also found that the admission of this evidence did not deprive Williams of a fair trial. Williams offers us no reason to find that this conclusion was an unreasonable application of federal law, or even a reason to disagree with the state court's analysis, and we find none. The challenged testimony regarding gang affiliation does not entitle Williams to habeas relief.

We move on to the evidence regarding the weapons found in Williams's car at the time of his arrest. A weapon found in a defendant's possession may be admitted only if it has some connection to the offense, but it is not necessary for the state to prove that the weapon was the one actually used in the crime. See People v. Lee, 242 Ill. App. 3d 40, 43, 610 N.E.2d 727, 729 (4th Dist. 1993). It is only necessary that the weapon be suitable for commission of the crime and in some way be connected to the crime. See People v. Dinwiddie, 299 Ill. App. 3d 636, 715 N.E.2d 640, 645 (1st Dist. 1998). The Illinois Appellate Court determined that testimony concerning the discovery of the guns was arguably

allowable as an admissible detail of the arrest. The court also concluded that even though only two weapons were fired at the scene, Robertson testified that three of the offenders had guns, and thus the 9-millimeter Luger handgun might have been the third weapon Robertson saw. Therefore, the court stated, it was "suitable for the commission of the crime," and testimony concerning the finding of the handgun was relevant and admissible. As for the testimony concerning the shotgun, the court determined that there was no basis for concluding that its introduction prejudiced Williams or that its exclusion would have led to a different result.

We believe that the trial court and the appellate court reasonably held that the testimony regarding the 9-millimeter Luger pistol was relevant and admissible. However, testimony regarding the shotgun may have been improperly admitted because, based on the evidence, the shotgun was not "suitable for the commission of the crime." The appellate court appears to have implicitly recognized the admission of this testimony as error. But even if the trial court erroneously admitted the testimony about the shotgun, Williams's claim fails. The appellate court determined that there was no basis to conclude that the admission of the shotgun testimony prejudiced Williams, or that the exclusion of the testimony would have led to a different result. Given the nature of the evidence against Williams, we cannot say that this conclusion involved an unreasonable application of federal law.

## 2. State's Failure to Inform Defense Counsel Regarding Circumstances of Robertson's Recantation

Williams's fifth claim is that the state's failure to inform defense counsel that Robertson claimed to have recanted because she was threatened by associates of Hines's attorney violated applicable discovery rules and denied him a fair trial.

Illinois Supreme Court Rule 412 governs the state's disclosure obligations to a criminal defendant. Courts have interpreted the rule to require the state to disclose a witness's oral statements only if they are reduced to writing and are in the witness's own words or substantially verbatim. See People v. Mahaffey, 128 Ill. 2d 388, 418, 539 N.E.2d 1172, 1186 (1989). Statements that are never memorialized need never be disclosed to defense counsel, absent bad faith on the state's part. See id., 128 Ill. 2d 419, 539 N.E.2d at 1187. The Illinois Appellate Court noted that Williams made no showing that a written report was ever made of Robertson's statements regarding the circumstances of the recantation, nor was there a showing of bad faith. Thus, the court concluded, there was no discovery violation. Williams also fails to make such showings in this proceeding and gives us no reason to believe that the appellate court's resolution of this issue was unreasonable or that he was denied a fair trial. Williams's fifth claim is therefore without merit.

- 19 -

## **CONCLUSION**

For the reasons stated above, the petition for a writ of habeas corpus is denied.

DATE: May 29, 2001

ENTER: *[signature]*

John F. Grady, United States District Judge